IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01931-RBJ

DAVID BARTCH,

    Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,
AMERICAN FAMILY LIFE INSURANCE COMPANY, a Wisconsin Insurance company,
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, a Wisconsin Insurance company,

    Defendants.

---

ORDER

---

Before the Court is American Family Mutual, American Family Life, and American Standard's [hereinafter "defendants'] motion to dismiss Claim Three of plaintiff's amended complaint alleging negligent misrepresentation. [ECF No. 22.] The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The motion has been fully briefed by the parties and is ripe for review.

**I.  Factual Background**

David Bartch, the plaintiff in this case, is a former insurance agent who sold policies on behalf of the defendants. Mr. Bartch first began working for the defendants in 1978, was appointed as a sales trainer in 1981, and returned to working as an agent in 1983. [ECF No. 20 at 2.] In 2007, Mr. Bartch relocated his family and his insurance agency to Greenwood Village, Colorado. He claims that one of American Family's managers, George Saponas, encouraged this

move by promising that Mr. Bartch would receive a number of insurance policies at his new Greenwood Village location sufficient to replace any policies lost as a result of the move. [ECF No. 20 at 5.] The defendants' also promised, according to Mr. Bartch, to allow him to review the policies before transfer in order to verify that he could service them, and that they would generate sufficient revenue. *Id.* at 6. Apparently defendants failed to deliver on any of these assurances, and Mr. Bartch ended up stuck in Greenwood Village with a paltry number of policies. *Id.* Mr. Bartch's relationship with defendants ended in 2012, and this lawsuit followed.[1]

As a part of his association with the defendants, Mr. Bartch entered into several written agreements. The latest agreement, and apparently the one that was in effect at the time of Mr. Bartch's move to Greenwood Village, is the so-called 1993 Agreement. This agreement established Mr. Bartch's role as an independent contractor of the defendants' and set out the parameters of that relationship.[2]

Mr. Bartch brings claims related to various alleged breaches of that agreement, but for purposes of this motion to dismiss, only a few sections are arguably relevant. Perhaps it goes without saying, but the fact that Mr. Bartch signed any agreement at all is what gave rise to his ability to market American Family policies in the first place. The parties also identify several individual sections of the 1993 Agreement that are pertinent to the motion to dismiss.

First, Section 6.e, "Assigned Policies," states that

---

[1] Mr. Bartch's complaint includes additional factual allegations regarding his termination that are not relevant to defendants' motion to dismiss and are not summarized in this order.

[2] Mr. Bartch claims Exhibit A is materially different from the 1993 Agreement, but does not bother to identify a single difference between the copies. Therefore, I treat Exhibit A as an indisputably authentic copy of a document central to the claim and see no need to convert this motion to dismiss into one for summary judgment.

> [t]he renewal service fee will be withheld for twelve months following the date of the assignment of any Mutual policy and the renewal service fee will be withheld for a period of six months on any Standard policy assigned to you. There will be no service fees paid on assigned Life policies. The Company may reassign any policy assigned to you at any time.

[ECF No. 32, Ex. A at 4 (AMFAM 006755).]

Second, Section 6.w, "Partial Assignment," explains the circumstances under which Mr. Bartch would be paid if he and defendants "agree[d] to reassign to another agent, a Mutual or Standard policy for which [Mr. Bartch] received new business commission. . . ." *Id.* at 8 (AMFAM 006759). Third and finally, the notes from the Agent Compensation Schedule explain how reassigned policies will be counted for compensation purposes. *Id.* at 14 (AMFAM 006765).

The parties have not identified any provision of the agreement explaining whether defendants have an obligation to reassign policies for an agent who is relocating, how the defendants will determine whether to transfer policies, or what obligations defendant incurs after it agrees to transfer policies. Nor can the Court, after examining the agreement, find any such provision.

On July 2, 2013 Mr. Bartch filed a complaint in the Arapahoe County District Court. Defendants filed a notice of removal on July 19, 2013 under 28 U.S.C. §§ 1332, 1441, and 1446. Mr. Bartch's Second and Fourth Claims were dismissed without prejudice as moot at a September 30, 2013 scheduling conference. [ECF No. 15 at 2.] With leave from the Court, he then filed an amended complaint on November 21, 2013. [ECF No. 20.][3] Mr. Bartch eliminated some claims and revised others, but the important issue in this motion to dismiss is the new Third

---

[3] The Court granted leave to amend the complaint except for Mr. Bartch's Second Claim for Relief. The relevant motions and orders are at ECF Nos. 17-19.

Claim for Relief that asserts negligent misrepresentation causing financial loss.[4] American Family moved to dismiss this claim as being barred by the economic loss rule. [ECF No. 22.]

## II. Discussion

### a. Standard of Review.

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Allegations that are purely conclusory need not be assumed to be true. *Id.* at 1951.

### b. Economic Loss Rule.

American Family's sole justification for dismissing Mr. Bartch's Third Claim is that the claim arises out of duties created by contract and therefore is barred by the economic loss rule. As I explain below, I disagree with American Family.

"The economic loss rule is intended to maintain the sometimes blurred boundary between tort law and contract law." *A.C. Excavating v. Yacht Club I Homeowners Ass'n, Inc.*, 114 P.3d 862, 865 (Colo. 2005). The Colorado Supreme Court has explained that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 865 (*quoting Town of Alma*, 10 P.3d 1256, 1264 (Colo. 2000)). While contract obligations develop from promises made by the parties, tort obligations arise from legal duties. *Id.* at 865-66. "The key to determining whether the economic loss rule bars a tort claim is 'determining the source of the

---

[4] This claim is identical to Claim Five in Mr. Bartch's original complaint.

duty that forms the basis of the action.'" *Jorgensen v. Colorado Rural Properties, LLC*, 226 P.3d 1255, 1258 (Colo. App. 2010) (quoting *Town of Alma*, 10 P.3d at 1262). In other words, claims for a breach of a duty arising in tort law are normally not barred by the economic loss rule. *Town of Alma*, 10 P.3d at 1263. "However, even a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract." *A Good Time Rental, LLC v. First American Title Agency, Inc.*, 259 P.3d 534, 537 (Colo. App. 2011) (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004). "That is, even if the duty would be imposed in the absence of a contract, it is not independent of a contract that 'memorialize[s]' it." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (quoting *BRW*, 99 P.3d at 74).

> In Colorado, the elements of negligent misrepresentation are
>
> (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment.

*Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011) (citation omitted). "The duty underlying the tort of negligent misrepresentation—to refrain from supplying false information to others for guidance in a transaction involving a pecuniary interest—is recognized at common law. *A Good Time Rental*, 259 P.3d at 541 (citing *Town of Alma*, 10 P.3d at 1263 and *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 72 (Colo. 1991)). Colorado courts have expounded on the scope of negligent misrepresentation claims, clarifying that "the scope of this tort pertains to conduct that leads or induces another to enter into a transaction or agreement, not to representations directly related to performance of a contract." *A Good Time Rental*, 259 P.3d at 541.

Representations made prior to entry into a contract appear to be susceptible to negligent misrepresentation claims even where the resulting contract "memorializes" the applicable duties. The Colorado Supreme Court has explained that a claim for negligent misrepresentation made prior to the execution of an agreement may provide the basis for an independent tort claim. *See BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004); *see also URS Group, Inc. v. Tetra Tech FW, Inc.*, 181 P.3d 380, 391 (Colo. App. 2008) (economic loss rule did not bar a subcontractor's recovery for project manager's alleged negligent misrepresentation where the alleged misrepresentation occurred before the parties entered into the contract). *See also Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69, 73 (Colo. 1991) ("[C]laims of negligent misrepresentation are based not on principles of contractual obligation but on principles of duty and reasonable conduct."

The preceding case law can be distilled down to this: claims of negligent misrepresentation are not necessarily barred by the economic loss rule as long as they are based on (1) duties that exist independently of the contract and are not subsumed within the contract, or (2) duties that are subsumed by the contract but where the alleged misrepresentation occurred before the parties entered into the contract.[5] Here, it appears that Mr. Bartch's Third Claim could fit into either category. The alleged misrepresentations in this case were either unrelated to duties imposed by the contract or occurred prior to a modification of the contract. Either way, the economic loss rule does not bar Mr. Bartch's claim.

The defendants offer two reasons why the economic loss rule applies in this case. First, they suggest that but for the existence of the 1993 Agreement, Mr. Bartch would not have any policies at all, and therefore any claims he brings are derivative of that contract and barred by the

---

[5] *Town of Alma* also recognizes exceptions to the economic loss rule where public policy provides that tort liability should not be allocated via contract, 10 P.3d at 1263, but that sort of exception is inapplicable in the instant case.

economic loss rule. This argument proves too much. As the Colorado Supreme Court made clear in *Town of Alma*, what matters for purposes of applying the economic loss rule is whether the relevant *duty* arises in the contract. That is a much narrower question than whether the *subject matter* of a dispute is covered by a contract.

Defendants advance a second, stronger argument that the 1993 Agreement contains provisions regarding the transfer of policies, and therefore the duties associated with those transfers are contained within the contract. Specifically, they urge that *BRW* indicates that the economic loss rule bars claims of negligent misrepresentation "where the duty allegedly breached is contained in or arises out of a contract." [ECF No. 22 at 4.] But the negligent misrepresentation claim in *BRW* was based on alleged breaches of duties unambiguously contained within the underlying contract. *BRW*, 99 P.3d at 68 ("Dufficy's tort claims are based on duties that are imposed by contract and therefore, contract law provides the remedies. Accordingly, the economic loss rule bars Dufficy's tort claims."). The contract in *BRW*

> sets out BRW's standard of care and its duties. Specifically, BRW agreed to complete all work performed under the BRW contract "in accordance with the standards of care, skill and diligence provided by competent professionals who perform work or services of a similar nature." BRW also agreed that its drawings and specifications for the Project would "represent a thorough study and competent solution for the Project as per usual and customary professional standards and shall reflect all architectural and engineering skills applicable to that phase of the Project." BRW also agreed to inspect the performance of the contract to determine that the work "has been or is being installed in conformance with the Contract Documents."

*BRW*, 99 P.3d at 68. Dufficy's negligent misrepresentation claim alleged that one of the defendant subcontractors "inaccurately 'represented to Dufficy . . . that Coblaco was performing its contractual obligations with Dufficy . . . in strict accordance with Sherwin–Williams' instructions and the Contract Documents.'" *Id.* at 70. The contract, therefore, assigned specific duties to the parties involved in the construction at issue in *BRW*, and Dufficy's tort claims

7

alleged breaches of those specific duties. That direct relationship between the duties in the contract and the tort claims caused the court to apply the economic loss rule.

In contrast, the unmodified 1993 Agreement in this case does not explain the duties that Mr. Bartch claims were breached. The relevant portions merely provide the generic statement that policies may be reassigned at any time but do not discuss obligations to transfer policies when an agent relocates or what to do when a transfer has been promised. As Mr. Bartch explains, "[w]hile the 1993 Agreement in general terms addresses the assignment or transfer of policies, it does not address specifically the Loss of Policies or provide or memorialize an agreed upon remedy or measure of damages among the parties for such a scenario." [ECF No. 27 at 8 (citation omitted).]

Alternatively, it is possible that the 1993 Agreement was modified by the defendants' promises to transfer a certain number of policies. The parties do not suggest this alternative, but it seems like an equally plausible factual scenario. *Cf. Haynes Trane Serv. Agency, Inc.*, 573 F.3d at 963 (observing that a policy giving rise to a duty between the parties may have become a contract and therefore memorialized the duty in question, but declining to reach the issue because an earlier trial established that the policy, as a matter of fact, did not impose contractual duties). Such a modification would, of course, mean that the new contract "memorialized" the duty to transfer the policies. Even if that were the case, the economic loss rule would be inapplicable because the alleged misrepresentation would have occurred prior to the modification and may have induced Mr. Bartch to modify the contract. *See BRW*, 99 P.3d at 74; *URS Group, Inc.*, 181 P.3d at 391.

### III.  Conclusion

The American Family defendants make no effort to have the Court dismiss Mr. Bartch's breach of contract claims.  Rather they simply argue that the agency agreement between them and Mr. Bartch covers any duty the defendants might have with regard to transfer of policies, and therefor, Mr. Bartch's claims are barred by the economic loss rule.  This argument misapplies the economic loss doctrine.  The agency agreement, at least in its unmodified form, gives rise to no duties regarding transfer of policies or how to compensate agents for lost policies, and negligent misrepresentation is a common law tort that exists independently of contract law.  Finally, in the event that Mr. Bartch can prove that the parties modified the agency agreement on the issue of whether to transfer policies and how many to transfer, his tort claim is still viable because the alleged misrepresentation occurred prior to the modification.  Therefore, defendants' Motion to Dismiss [ECF No. 22] is DENIED.

DATED this 13th day of May, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge