IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01931-RBJ

DAVID BARTCH,

    Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,
AMERICAN FAMILY LIFE INSURANCE COMPANY, a Wisconsin Insurance company,
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, a Wisconsin
Insurance company,

    Defendants.

---

ORDER

---

Before the Court is American Family Mutual, American Family Life, and American Standard's [hereinafter "defendants"] motion for summary judgment. [ECF No. 42.] The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The motion has been fully briefed by the parties and is ripe for review. The motion is granted as to plaintiff's First and Seventh Claims but otherwise denied.

**I.**    **Factual Background.**

David Bartch, the plaintiff in this case, is a former insurance agent who sold policies on behalf of the defendants. Mr. Bartch first began working for the defendants in 1978, was appointed as a sales trainer in 1981, and returned to working as an agent in 1983. [ECF No. 20 at 2.] As an agent, Mr. Bartch entered into several written agreements with defendants, the most recent of which was signed in 1993. [ECF No. 42, Ex. A ("the 1993 Agreement").]

In 2007, Mr. Bartch relocated his family and his insurance agency to Greenwood Village, Colorado where he shared an office with another American Family agent, Kiley Brenneman. He testified that one of American Family's managers, George Saponas, encouraged this move by promising that Mr. Bartch would receive a number of insurance policies at his new Greenwood Village location sufficient to replace any policies lost as a result of the move. [ECF No. 58, Ex. S, 102:20-103:2.] The defendants' also promised, according to Mr. Bartch, to allow him to review the policies before transfer in order to verify that he could service them, and that they would generate sufficient revenue. Apparently defendants failed to deliver on any of these assurances, and Mr. Bartch ended up stuck in Greenwood Village with a paltry number of policies. *Id.*

In September of 2012, defendants initiated a fraud investigation of Mr. Bartch's agency. The purpose of the investigation was to determine whether the agency had issued false proof of insurance cards and whether the agency had improperly provided retroactive coverage on a claim. The investigation revealed several problems with Mr. Bartch's agency, and ultimately led to his termination on November 6, 2012.

After termination, defendants sent a letter to all of the policyholders who had previously been serviced by Mr. Bartch. [ECF No. 44, Ex. N.] This letter, which contained Mr. Bartch's name in the signature line, erroneously stated that Mr. Bartch had retired from the business. *Id.* Defendants have not sent any correction letter to Mr. Bartch's former policyholders. Mr. Bartch testified that he suffered emotional distress after the letter was sent. [ECF No. 42, Ex. D, 142:7-143:3.] Moreover he claims that his business is dependent on word-of-mouth referrals and that the letter has led to fewer referrals and fewer clients. [ECF No. 52, Ex. 6, 54:3-7; Ex. 7, 34:4-9.]

On July 2, 2013 Mr. Bartch filed a complaint in the Arapahoe County District Court. Defendants filed a notice of removal on July 19, 2013 under 28 U.S.C. §§ 1332, 1441, and 1446. Mr. Bartch's original Second and Fourth Claims were dismissed without prejudice as moot at a September 30, 2013 scheduling conference. [ECF No. 15 at 2.] With leave from the Court, he then filed an amended complaint on November 21, 2013. [ECF No. 20.][1] American Family moved to dismiss Mr. Bartch's third claim for negligent misrepresentation as being barred by the economic loss rule. [ECF No. 22.] The Court denied that motion on May 13, 2014. [ECF No. 48.]

The complaint as amended brings seven claims: (1) breach of contract related to the termination notice provisions; (2) breach of contract related to the transfer of policies; (3) negligent misrepresentation related to the transfer of policies; (4-6) three claims based on the retirement letter (invasion of privacy, intentional interference with prospective business relations, and violation of the Colorado Consumer Protection Act ("CCPA")); and (7) a claim for accounting. Mr. Bartch does not oppose dismissal of his First and Seventh Claims.

## II.     Standard of Review.

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty*

---

[1] The Court granted leave to amend the complaint except for Mr. Bartch's Second Claim for Relief. The relevant motions and orders are at ECF Nos. 17-19.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

**III.     Analysis.**

**A. Claim Two: Breach of Contract Agency Transfer.**

Defendants raise two arguments in support of summary judgment on Mr. Bartch's second claim pertaining to the promise to transfer policies to his new location in Greenwood Village. They argue that Mr. Bartch's claims accrued as a matter of law in 2007 when he transferred (or, at the latest, in 2009 when he emailed a supervisor to ask about the status of the transferred policies) and are therefore time-barred by Colorado's three-year statute of limitations on contract actions. *See* Colo. Rev. Stat. § 13-80-101(1)(a). Second, they suggest that even if his claims are not time-barred he is unable to offer any evidence to support two elements—inducement and reliance—of his promissory estoppel theory. I am not persuaded by either argument.

A breach of contract claim accrues "on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(6). "Generally a claim for relief in actions arising out of non-performance of contract obligations accrues at the time of the failure to do the thing required to be done under the contract." *Goeddel v. Aircraft Fin., Inc.*, 382 P.2d 812, 815 (Colo. 1963) (en banc). "The time of accrual is usually a question of fact, but if the undisputed facts clearly show when a plaintiff discovered or should have discovered the damage or conduct, the issue may be decided as a matter of law." *Crosby v. Am. Family Mut. Ins. Co.*, 251 P.3d 1279, 1283 (Colo. App. 2010) (citation omitted); *see, e.g.*,

*Stiff v. BilDen Homes, Inc.*, 88 P.3d 639, 642 (Colo. App. 2003) (affirming the trial court's grant of summary judgment and finding that a plaintiff's claim for breach of warranty accrued when she received word from defendant that it was refusing to perform warranty work).

It is possible that Mr. Bartch knew of the facts giving rise to his claim prior to his termination, but it is not unambiguously clear that he had or should have had such knowledge at that time. Some of the ambiguity, strangely, seems to arise from inconsistencies in Mr. Bartch's own testimony. For example, Mr. Bartch explained in his deposition that Mr. Saponas promised to transfer policies prior to the relocation in 2007. [ECF No. 58, Ex. S, 102:20-103:2 (testifying that the conversations about transferring policies occurred "several months before the move").] Mr. Bartch's more recent declaration, however, seems to suggest the conversations or promises occurred after the move.

> After relocating the Bartch Agency in early 2007 from Aurora to Greenwood Village, I was promised by representatives of Defendants in early 2007 and thereafter that the Bartch Agency would receive additional insurance policies to make up for deficiencies in the number and quality of insurance policies that I received as part of relocating the Bartch Agency from Aurora to Greenwood Village.

Bartch Decl, ECF No. 52, Ex. 2, ¶ 8.

It is unclear when these promises were made, if they were made at all. Such ambiguity is the result of a garden variety factual dispute meant to be resolved by a jury, not a judge on a motion for summary judgment. Moreover, the precise date of the alleged promises is not the dispositive question for purposes of determining the date of accrual. Assuming the promises were made before the relocation, what matters is when Mr. Bartch should have been aware of the breach.

The Court cannot find any evidence in the record that conclusively establishes when the transfer of policies was to occur. In fact, as best as I can tell, the policies were to be transferred

"when they became available." Letter from David Bartch to Jeff Makari, ECF No. 52, Ex. 11. This open-ended time-table suggests that defendants were under an indefinite and ongoing obligation to transfer the policies (assuming that a promise was made). Therefore Mr. Bartch makes a plausible argument that he was not aware that the policies would not be transferred until he was terminated in 2012 and such a transfer was out of the question.

Alternatively, defendants argue that they were under no contractual obligation to transfer policies to Mr. Bartch. Mr. Bartch appears to concede this point in his response. [ECF No. 52 at 9 (stating that defendants were "not under a contractual obligation under the 1993 Agreement to assign/reassign a set number of policies").] This is consistent with the motion to dismiss in which the Court held that the duty to assign/reassign policies was not memorialized in the 1993 Agreement. The duty either arose later as a modification of the 1993 Agreement or it was based not on contract principles, but rather promissory estoppel principles.

Finally, defendants attack Mr. Bartch's promissory estoppel claim by arguing that he could not have relied on a promise to transfer policies. The elements of promissory estoppel are

> 1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.

*Berg v. State Bd. of Agric.*, 919 P.2d 254, 259 (Colo. 1996). In their reply, defendants seize on Mr. Bartch's testimony that the alleged promises were made after he relocated in 2007. If the promises were made after the relocation, then it would have been impossible for Mr. Bartch to rely upon those promises thereby negating the second and third elements of promissory estoppel. As I explained above, this testimony is puzzling and seems to directly contradict other testimony Mr. Bartch has given in this case. This question is, nevertheless, a factual one, and I decline to grant summary judgment based on this inconsistency.

In addition, defendants argue that Mr. Bartch moved voluntarily because there was an opening in Greenwood Village that was closer to his home. [ECF No. 42, Ex. D at 101.] Again, this is a classic fact dispute. In the same portion of Mr. Bartch's deposition cited by defendants, Mr. Bartch testified that he had "concerns about losing customers." *Id.* at 100. Moments later he testifies about conversations he had prior to the relocation about transferring policies. [ECF No. 58, Ex. S, 102:20-103:2.] I do not know whether a jury will believe Mr. Bartch when he tells them he had these conversations and relied upon them before relocating. But that is the jury's decision to make.

### B. Claim Three: Negligent Misrepresentation.

Initially, defendants only argument in support of summary judgment on Mr. Bartch's third claim of negligent misrepresentation in connection with the alleged promise to transfer policies was that the claim was barred by the economic loss rule. That argument was rejected in this Court's order denying defendants' motion to dismiss on May 13, 2014. [ECF No. 48.] In their reply, defendants raised for the first time an argument that Mr. Bartch could not have relied upon these alleged misrepresentations if they were made after he relocated his agency. [ECF No. 58 at 4.] This argument is based on Mr. Bartch's testimony in his declaration that the promises were made after the relocation. As discussed above, I agree that if true, the testimony in that declaration would seem to foreclose any argument that Mr. Bartch relied upon the representation. As I explained above, however, it is unclear when the alleged promises occurred. This is a disputed material fact, and the Court cannot grant summary judgment on this claim.

### C. Claim Four: Invasion of Privacy.

Mr. Bartch's fourth claim for invasion of privacy is based exclusively on the retirement letter. Under Colorado law, the elements of the tort of invasion of privacy are "1) the defendant

7

used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred." *Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 1002 (Colo. 2001) (en banc). Defendants ask this Court to grant summary judgment because Mr. Bartch cannot prove any damages resulting from the retirement letter.

When asked about damages at his deposition, Mr. Bartch referred to an undetermined amount of money and emotional damages. Asked to clarify the monetary damages, he said

> People that if I had continued on in the insurance business may have contacted me through their family, through friends, whatever, or future business. If I'm retired, if somebody called and asked for me and they were told that I had retired, they wouldn't follow up and try to contact me.

[ECF No. 42, Ex. D, 142:19-143:3.]

Defendants advance several arguments in their favor. They point out that Mr. Bartch never attempted to contact any of his former policyholders to correct the error. I cannot see how that is relevant to his claim that he was emotionally and monetarily damaged by the sending of the retirement letter. Indeed, as defendants point out, he was legally prohibited from contacting those recipients for one year following his termination. [ECF No. 42, Ex. A at 5.]

Defendants claim that Mr. Bartch later consented to the mailing of the retirement letter. However their only factual support for this claim is the testimony of Mr. Brenneman. ECF No. 42, Ex. O, 81:12-83:3.] This testimony is directly contradicted by Mr. Bartch's testimony that he never gave any consent to send this letter. [ECF No. 52, Ex. 2 ¶ 12.]

It does appear that Mr. Bartch cannot point to a particular customer who would have stayed with him had it not been for the retirement letter. On the other hand, given that the defendants announced that he had retired from the business, did not correct their "error," and effectively precluded Mr. Bartch from contacting the customers and soliciting their business, his

inability to identify specific customers who would have stayed is not particularly surprising. Nor would it be particularly surprising that at least some customers whom Mr. Bartch had served over his long career might well have wished to continue to have him serve as their insurance agent had they not been misinformed by the defendants. There is also the non-economic (emotional) component to his damages claim, which is never easy to quantify. Difficulty in determining the precise amount of damages does not prevent an award of damages. While the defendants' arguments might carry the day at trial, there are disputed facts that preclude summary disposition.

### D. Claim Five: Intentional Interference with Prospective Business Relations.

Mr. Bartch's fifth claim—for intentional interference with prospective business relations—is based exclusively on the retirement letter as well. Defendants' grounds for summary judgment on this claim are a repetition of the arguments raised in favor of summary judgment on Mr. Bartch's fourth claim. It might be difficult to prove the intent element – defendants' evidence that "retirement" was chosen in an effort to preserve Mr. Bartch's honor and dignity could be accepted as a sufficient reason to find that interference with prospective relationships with these customers was not a motivation. But because those arguments are founded on disputes of material fact, summary judgment is inappropriate.[2]

---

[2] There is one potentially noteworthy difference between the defendants' arguments on these two claims. In support of summary judgment on the fifth claim, defendants argue that to the extent Mr. Bartch's claim of intentional interference with prospective business relations is based on alleged interference with policyholders he serviced at the time of his termination, that claim fails as a matter of law because the policyholders were insured by American Family. See ECF No. 42 citing *MDM Grp. Assocs., Inc. v. CX Reinsurance Co. LTD*, 165 P.3d 882, 886 (Colo. App. 2007). That case is inapposite. In *MDM Group*, the court held that a defendant "cannot be liable for interference with its own contract." That is not how the Court understands Mr. Bartch's claim. To the extent that Mr. Bartch complains of interference with prospective business relations with clients who were existing policyholders with American Family, he is complaining about the *prospective* relationships he might have enjoyed with those individuals after he left American Family and they chose to follow him.

**E. Claim Six: Colorado Consumer Protection Act ("CCPA").**

Like the preceding two claims, this sixth claim of Mr. Bartch's is also premised entirely on the retirement letter. Defendants argue that Mr. Bartch cannot prove the existence of (1) a deceptive trade practice, (2) significant public impact, or (3) injury/damages. As I have already addressed the disputed facts surrounding the issue of damages, my analysis will focus on whether the letter could be construed as a deceptive trade practice and whether the letter had a significant public impact.

To be considered a deceptive trade practice for CCPA purposes, a defendant's representation must "either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 52 P.3d 142, 147 (Colo. 2003) (en banc). Furthermore, such a representation is only actionable if it is made "either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Parks v. Bucy*, 211 P. 638, 639 (Colo. 1922).

In the instant case, defendants' argument that the retirement letter is not a deceptive trade practice is based on the fact that there is no proof that the letter induced anyone to act or refrain from acting, that there is no evidence that the letter was sent with the intent to deceive, and that Mr. Bartch actually consented to the letter being sent. Mr. Bartch disputes each of these factual conclusions. It also seems rather apparent to this Court that the letter at least has the "capacity" to attract consumers since it leaves current and potential future policyholders with the impression that Mr. Bartch is no longer in the insurance business.

In order to determine whether a defendant's actions had a significant public impact, the following factors should be considered: "(1) [T]he number of consumers directly affected by the

challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings*, 62 P.3d at 149. Defendants apparently believe that too few consumers were impacted by the letter to constitute significant public impact. [ECF No. 42 at 19.] They cite *Rhino Linings* for the proposition that public impact is lacking when only a small group of prospective consumers is affected rather than the general public. *Id. Rhino Linings* is easily distinguishable on this point since that case involved three customers while the retirement letter in this case was mailed to more than 2,000 policyholders. *Rhino Linings*, 62 P.3d at 150; ECF No. 52, Ex. 13.

Another portion of *Rhino Linings* elaborates on the concept of public impact. "When a transaction is no more than a private dispute, as is the case here, 'it may be more difficult to show that the public has an interest in the subject matter. . . .'" *Rhino Linings*, 62 P.3d at 150 (quoting *Hall v. Walter*, 969 P.2d 224, 238 (Colo. 1998)). This case smacks of a private rather than a public dispute. That said, the Court cannot say conclusively whether the 2,000 plus policyholders who received the letter might have been significantly affected by it. Therefore summary judgment on this claim is inappropriate.

IV.     **Conclusion.**

Defendants' motion for summary judgment [ECF No. 42] is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to Claims One and Seven and is DENIED with respect to all other claims.


        DATED this 8th day of July, 2014.

                                BY THE COURT:

11

_____

R. Brooke Jackson
United States District Judge

12